HHW

RECEIVED
9-2-2008
SEP 0 2 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

United States of America ex rel.

Ronald Ruhl, R-12207
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

Terry McCann
(Warden, Superintendent, or authorized person having custody of petitioner)

RESPONDENT, and

**(Fill in the following blank only if judgment attacked imposes a sentence to commence in the future)**

ATTORNEY GENERAL OF THE STATE OF

(State where judgment entered)

08CV4980
JUDGE HOLDERMAN
MAG. JUDGE COLE

Case Number of State Court Conviction:

02-CF-2183

**PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY**

1. Name and location of court where conviction entered: The 19th Judicial Circuit Court of Lake County Illinois [18 North County Street, Waukegan, IL 60085]

2. Date of judgment of conviction: February 6th, 2003

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

First degree murder and personally discharging gunshot

4. Sentence(s) imposed: Fifty (50) years at 100%

5. What was your plea? (Check one)
   (A) Not guilty (X)
   (B) Guilty ( )
   (C) Nolo contendere ( )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):     Jury (X)       Judge only ( )

2. Did you testify at trial?       YES ( )       NO    (X)

3. Did you appeal from the conviction or the sentence imposed? YES (X) NO ( )

    (A) If you appealed, give the

       (1)   Name of court:   Appellate Court of Illinois, 2nd Dist.

       (2)   Result:   Conviction Affirmed

       (3)   Date of ruling:   Dec,15th,2004 [Petition for Rehearing denied/Feb 18,2005]

       (4)   Issues raised:   [see: Part I, #3,A.]

    (B) If you did not appeal, explain briefly why not:

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (X)      NO ( )

    (A) If yes, give the

       (1)   Result:   PLA denied

       (2)   Date of ruling:   May 25th,2005

       (3)   Issues raised:   Issue #1, Serio Statements Against Penal Interest.
                    #2, Tardy Disclosure of Identification Witness

    (B) If no, why not:

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No (X)

    If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

2

Revised: 7/20/05

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (X)    NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court:  The 19th Judicial Circuit, Lake County Illinois

   B. Date of filing:  November 25th,2005

   C. Issues raised:   **[see: Part II, 1.A]**

   D. Did you receive an evidentiary hearing on your petition?       YES ( )  NO (X)

   E. What was the court's ruling?  Petition Frivolous & Patently Without Merit

   F. Date of court's ruling:  February 10th,2006

   G. Did you appeal from the ruling on your petition?        YES (X)  NO ( )

   H. (a)  If yes, (1) what was the result?  Conviction affirmed

   (2) date of decision:  Oct,30,2007 [Rehearing denied/Dec,7th,2007]

   (b)  If no, explain briefly why not: _____

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES (X)   NO ( )

   (a)  If yes, (1) what was the result? Leave to Appeal Denied

   (2) date of decision:  March 26th,2008

   (b)  If no, explain briefly why not: _____

3

Revised: 7/20/05

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?   YES (X)   NO ( )

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.   Nature of proceeding      Petition for Leave to File 2nd P-C

        2.   Date petition filed        Aug 5th 2008

        3.   Ruling on the petition     Awaiting Ruling

        4.   Date of ruling         _____

        5.   If you appealed, what was the ruling on appeal?      _____

        6.   Date of ruling on appeal    _____

        7.   If there was a further appeal, what was the ruling ?      _____

        8.   Date of ruling on appeal     _____

3.   With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?   YES ( )   NO (X)

    A. If yes, give name of court, case title and case number: _____

_____

    B. Did the court rule on your petition?  If so, state

        (1) Ruling:    _____

        (2) Date:    _____

4.   With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?   YES (X)   NO ( )

    If yes, explain:   As stated above, I have filed a Petition for Leave to File a second Post-Conviction asserting that Post-Conviction Counsel (Thomas Brandstrader) fell below the reasonable standard by failing to include Petitioners Post-Trial/Direct Appeal Counsel (Jed Stone) as also being ineffective for failing to provide and secure all Affidavits, Police reports, Co-Defendants transcripts, Police interviews, and other materials related to Police investigation of Neubauer's murder, (all of which was attached to initial Post-Conviction )

(Continued at Part II, 4.A)

4

Revised: 7/20/05

## PART III – PETITIONER'S CLAIMS

1.   State briefly every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)   Ground one   Affirming the Trial Courts Dismissal the 2nd District
Supporting facts (tell your story briefly without citing cases or law):

Appeals Court Held That the Admission of the Contested Hearsay Statements

Did Not Violate the Mandate of Crawford V. Washington Holding, and thus

the Petitioner Could Not Put Forth the Gist of a Constitutional Violation

of Denial of Effective Assistance of Counsel.

**(Please see Part III, 1.A)**

(B)   Ground two   Petitioner was Deprived of a Fair Trial When Trial Court
Supporting facts:

Would Not Allow Marcy McIntosh to Testify About Raymond Serio's Statement

Against Penal Interest Made To Her.

**(Please see Part III, 1.B)**

Revised: 7/20/05

(C)  Ground three   The State Deprived Petitioner of a Fair Trial When It
     Supporting facts:

Revealed on the Second Day of Trial a Previously Undisclosed Identification

Witness.

**(Please see Part III, 1.C)**

(D)  Ground four   Petitioners Constitutional Right to Effective Assistance
     Supporting facts:

of Counsel was Violated in the Above Entitled Cause and said Violations

Resulted in Petitioners Conviction, Sentence and Incarceration inthat

**(Please see Part III, 1.D)**

2.   Have all grounds raised in this petition been presented to the highest court having jurisdiction?

     YES ( )  NO (X)

3.   If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

All grounds have been presented to highest Court with the exception
          (Please See Part III, Question #3)

6

Revised: 7/20/05

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _Edward Edens; 1212 S.Naper Blvd.,Naperville,IL 60540_

(B) At arraignment and plea _Edward Edens; 1212 S.Naper Blvd.,Naperville,IL 60540_

(C) At trial _Edward Edens; 1212 S.Naper Blvd.,Naperville,IL 60540_

(D) At sentencing _Jed Stone; 415 W.Washington St.,Suite 201.,Waukegan,IL 60085_

(E) On appeal _Jed Stone; 415 W.Washington St.,Suite 201.,Waukegan, IL 60085_

(F) In any post-conviction proceeding _Thomas Brandstrader; 53 W.Jackson Blvd.,Suite 615.,IL_

(G) Other (state): _Thomas C.Brandstrader; 53 W.Jackson Blvd.,Suite 615.,Chgo,IL 60604_

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )  NO (X)

Name and location of the court which imposed the sentence: _____

Date and length of sentence to be served in the future _____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____     _____
            (Date)                        Signature of attorney (if any)


**I declare under penalty of perjury that the foregoing is true and correct.**

_____
(Signature of petitioner)

R-12207
(I.D. Number)

P.O.Box 112.,Joliet,IL 60434
(Address)

Revised: 7/20/05

# TABLE OF CONTENTS

Court Approved Habeas Corpus form........................... Pg. 1-7

Part I, Question #4, Issues raised within Direct Appeal...... Pg. 8

Part II, Question #1, Issues raised within Post Conviction... Pg. 8-12

Part II, Question #4, legal proceedings pending in
State Court................................................. Pg. 12-14

Part III, Question #1, Ground one presented for review....... Pg. 15-16

Part III, Ground two presented for review................... Pg. 17-21

Part III, Ground three presented for review................. Pg. 21-24

Part III, Ground four presented for review.................. Pg. 25-51

Part III, Question #3, explanation for ground not presented
to highest State Court within Petition...................... Pg. 52-53

Exhibit content list........................................ Pg. 1-3

Exhibits.................................................... Pg. 1-200

**Part I, 3.A**

**Issue #1.** Ronald Ruhl Was Deprived of a Fair Trial When the Trial Court Would Not Allow Marcy McIntosh to Testify About Raymond Serio's Statement Against Penal Interest Made to Her.

**Issue #2.** The State Deprived Ronald Ruhl of a Fair Trial When It Revealed on the Second Day of Trial a Previously Undisclosed Identification Witness.

**Issue #3.** The State Failed to Give Ronald Ruhl Appropriate Notice About the Extended Term Factor and then the Jury Was Improperly Instructed About the Extended Term Factor, Thereby Depriving Ronald Ruhl of His Due Process Rights.

**Issue #4.** The Use of an Anonymous Jury Was Prejudicial to Ronald Ruhl in that It Raises the Specter that the Defendant Is a Dangerous Person From Whom the Jurors Must be Protected.

**Part II, 1.A**

**Issue #1.** Petitioners Constitutional Right to Effective Assistance of Counsel, Protected by the Sixth Amendment to the Constitution of the United States and the Illinois Constitution Was Violated and Said Violations Resulted in His Conviction, Sentence and Incarceration.

**Claim A.** From the outset, Trial Counsel seemed baffled by the complexity of representing an individual in a homicide case, made Statements and behaved in a fashion inconsistent with competent and

effective Counsel.  After conversation with Petitioner at Police station, Counsel told Police that Petitioner would "rather do murder time than rat-out Serio."


**Claim B.** Trial Counsel was continually late or completely absent on nine of the eleven pretrial dates (including most important pretrial date on the Admissibility of Co-Defendants Confession.)

Trial Court was forced to quiz Counsel on his expertise and Counsel told the Court that he only "did mostly murders and major drug cases."

Trial Counsel also lied to Petitioner about His prior trial experience, as Counsel told Petitioner before being hired, that He had in-fact tried twenty(20) murder cases and won nineteen of them with the only loss being reversed on appeal. (Court record showed Counsel never tried a murder case aside from the one attempt He was disqualified during pretrial by Trial Court judge, see People v. Crowe, 327 Ill.App.3d.930[2002]).


**Claim C.**  Trial Counsels failure to present corroborating testimony of Jim Natywa who was sitting next to co-defendant Serio when he confessed to killing the victim (Neubauer) himself at Whiplash bar − this confession made to defense witness Marcy McIntosh.

Counsels failure to have **both** Natywa & McIntosh present at the hearing on admissibility of Serio's statement led to Trial Court finding the statement was not corroborated, thus would not be allowed in the Ruhl Trial.  Although Trial Counsel requested that he'd be allowed to present Natywa the following day to corroborate McIntosh's testimony, this request was denied by Trial Court. **(see Affidavits)**

9

**Claim D.** Trial Counsels failure to interview and/or present Medical Examiner Nancy Jones because counsel did not know how to Subpoena out-of-state witnesses prejudiced the defense during counsels Motion to Dismiss on Improper Venue, as well as trial preperation, Counsel entered into a stipulation as to venue of the Court and to the where, when and what order the shots were inflicted to the victim. (Exh. Q)

At trial Dr.Nancy Jones testified as her report stated "not being able to tell where, when, or what order the shots were inflicted to the victim.

**Claim E.** Trial Counsels opening and closing argument(s) were completely inconsistent, vulgar and nonsense-like.

Counsel promised the jury they would hear from a witness who would testify as to the mileage between Whiplash bar, the body of the victim(Neubauer) and State Witness Denise Schubats residence. However, it turned out that Counsel also lied to Petitioner about hiring the investigator who he told Petitioner had performed this drive-time experiment and for which Counsel received seperate funds.

Counsels opening and closing was the equivalent of a plea of nolo contendere, Counsel failed to apply the adverse testing processs that is required of competent Counsel.

**Claim F.** Trial Counsel was ineffective for not attempting to exclude, or limit the use of hearsay statements from co-defendant Raymond Serio brought into trial through State Witnesses Derrick Banks and Denise Schubat.

**Claim G.** Counsels failure to interview witnesses presented to him by the facts and the Petitioner (i.e.,Scott Owens, Jim Natywa, and Jenny Shoblom, [see Affidavits])... Counsel was also ineffective for failing to interview government informant (Amanda Barbaro) who (Exh. G) co-defendant Ray Serio also confessed to killing Neubauer himself.

Also, failure to interview William Niemi who was active in the local drug trade and also overheard Serio make admissions to the Neubauer murder. (Exh. P)

**Claim H.** Counsel was ineffective for failing to investigate and corroborate Neubauers involvement in the drug trade with Serio and Schubat the states star witness. Failure to interview Neubauers previous girlfriend, Cathy Davis, who told Police of his drug dealing, also Michael Cunningham who had given a taped interview to Lake County Police that Neubauer, Schubat and Serio dealt drugs from Whiplash Bar. (Exh. I,C)

Failure to investigate the fingerprint of known drug dealer Melham Riachi, who'se fingerprint was one of only three prints found on Neubauers Vehicle at crime scene (i.e.,drivers door handle.) Trial Counsel conducted no investigation at all in these matters. (Exh. J)

**Claim I.** Trial Counsel was ineffective for failing to call witnesses to impeach Denise Schubat on the bevy of false information and inconsistent statements she gave to Police in efforts to cover-up her involvement in Neubauers murder. Detectives Hafke, Manis, and Smith were never questioned by Counsel at all, and Counsel failed to ask even one question of detectives Lucci, Jonites, and Stanek, pertaining to said reports during Counsels cross-examination. **(see Reports)** (Exh. E,F)

**Claim J.**  Counsel was ineffective and ill-prepared in handling the states surprise witness (i.e.,Waukegan Police Officer) on the second day of Petitioners Trial.  Furthermore, Counsel failed to take Court-sponsored opportunity to interview said witness, nor did Counsel show-up at the mid-trial identification of his client which was improperly conducted by lead detective Jonites. (Exh.H)

**Claim K.**  Trial Counsels failure to secure and produce victims (Neubauer) cellphone records showing "No" call from Denise Schubat's home (landline) at 248AM on the night of the murder was ineffective as this evidence is completely contrary to Schubats testimony and the states theory "that she was at home and could not have abetted Serio." (Exh.K)

**Claim L.**  Trial Counsel was ineffective by threatening Petitioner with the specter of a life long prison sentence if Petitioner testified on his own behalf.

**Claim M.**  Post-trial/Appellate Counsel was ineffective for failing to file a Motion to Reconsider Sentence after Serious sentencing violations, thereby preventing their review by Appellate Court.

**Part II, 4.A**

Mr.Stone filed Petitioners Post-trial Motion raising amongst other issue's that Trial Counsel was gravely ineffective on multiple grounds, as well as abuse of discretion by Trial Court during Admissibility Hearing of Co-defendant Confession.   However, Mr.Stone failed to file a Motion to Supplement the record with the above

stated evidence that was outside of the Trial Record, but critical
to support Post-trial Motion claims.   Thus precluded this evidence
from Post-trial motion review, as well as Appellate Court Direct
Review, which was noted by Appellate Court (at Rule 23 order No.2-
03-0920, Pg's 15, 24 & 26.) (Exh. S)

After the Appellate Court denied the direct appeal, Petit-
ioner dismissed Attorney Jed Stone and hired Attorney Thomas Brands-
trader.   At this time Petitioner had sent by mail a draft of the
issues to be included in the Petition for Rehearing, this draft was
received by Mr.Brandstrader and reviewed.

In response was a letter enclosed with Petitioners draft
where Counsel infact wrote next to each issue raised by Petitioner
when and where Mr.Brandstrader would be including these issues.(Exh. U)

As presented within the second Post-Conviction, amongst
other issues, the very issue of Mr.Stones failure to provide the
Court with the proper Court record and facts (i.e.,above stated
evidence) was ineffective and prejudiced defendant.

Mr.Brandstrader made clear in his letter that he would
infact be including this issue within Petitioners Post-Conviction
however, Mr.Brandstrader filed said Post-Conviction on the last day
possible (Nov,22nd,2005) without any review by petitioner.

Counsel infact forgot to raise the above issue as he
agreed to the Petitioner. This mistake led to the dismissal of all
exhibits within the Post-Conviction and issues the exhibits supported.

As noted (Rule 23 order No.2-06-0227 at Pg's 14-18)(Exh. T)
"Defendant may not circumvent res judicata or forfeiture by provid-
ing documents in a piecemeal fashion without explaining why the

13

information contained was not filed in his Post-trial Motion."

This error by Post-Conviction Counsel was at no fault of Petitioner and rendered the Post-Conviction fundamentally deficient. Thereby Petitioner seeks state court intervention through the filing of said second Post-Conviction, also seeking to circumvent any issue of filing a "mixed petition" within this Honorable Habeas Corpus Court.

As such Petitioners intentions are that this Honorable Court will grant Petitioner a Stay of Proceedings in order to allow exhaustion of state remedies pertaining to said second Post-Conviction.

Part III, 1.A

The states star witness (Denise Schubat) testified to hearing co-
defendant (Ray Serio) tell Petitioner while in the kitchen of Whip-
lash bar: "We're going to kill him," refering to the victim Richard
Neubauer.    Schubat testified to this statement repeatedly (R.587-
590, 593 &635) alleging this conversation took place a week before
Neubauer was murdered.

The state relied upon this same statement during opening
statements (R.341-342) as well as closing argument (R.1043) and
during accountability jury instructions (R.1036).

Petitioner argued to reviewing courts that the use of this
statement violated Confrontation Clause Rights and that (1) Trial
Counsel was ineffective for failing to file a Motion to Exclude, or
at least limit the use of Serio's alleged statements, (2) ineffective
for not objecting to the use of this statement, and (3) ineffective
in failing to utilize detectives Lucci & Hafkes' reports (DM205,DM
188) inthat Schubat stated the conversations Serio engaged in about
killing Neubauer while talking in the Whiplash kitchen, occurred
infact between Schubat herself and Serio, **Not** Serio and Petitioner
as testified to at trial by Schubat. (Exh.D,E)

Trial Court dismissed petitioners claim stating <u>Crawford V.</u>
<u>Washington</u> did not apply retroactively (dismissal order Pg 7) to(Exh.R)
Petitioners case.  Appellate Court ruled that although Trial Court
was mistaken and that <u>Crawford</u> did infact apply to Petitioner ,
however, admission of the contested hearsay was proper and did not
violate <u>Crawford</u> as the statement of a co-conspirator are always
nontestimonial and therefore are not protected by the Confrontation
Clause, as such, Trial Counsels failure to object to,or attempt to
limit use had no effect on the outcome of defendants trial (Rule 23

15

order No.2-06-0227 at Pg 14).(Exh.T)

Petitioner asserts this ruling ignores the "fundamental issue of <u>reliability</u> analysis of hearsay evidence before any consideration of testimonial or nontestimonial."  Had Trial Counsel filed a Motion to Exclude and supported said motion with above stated evidence, as well as the fact this witness(Schubat) had direct involvement and motive to lie as she admitted to doing prior   to Police. (Exh. Ef)

Surely Trial Court would have found this hearsay unreliable, furthermore, even had Trial Court ruled the hearsay sought to be entered reliable.  Trial Counsel was gravely ineffective in failing to call both Det.Hafke and Lucci to rebut Schubats testimony of this statement and admitt the statement by Schubat: **that she made comments to Serio in the past when she was upset with Neubauer, such as "It would be better if he (Neubauer) was just gone."**(DM205)(Exh. F)

**Denise(Schubat) had told Ray that Rick had beat on her in the past and it would be nice if he was just out of the way. Ray said he could kill Rick and he and Denise could be together** (DM188).(Exh.E)

Trial Counsels failure to rebut this testimony by the states star witness in <u>any</u> form, prejudiced petitioner as the alleged statement if considered as credible by the jury would at minimum made Petitioner meet the accountability instruction given by the state, thereby leaving no reasonable decision not to have utilized said evidence either before the statement was introduced, or after the statement was introduced.

**Part III, 1.B**

On April 4th,2002, after leaving the Lake County,IL Sheriffs Depart-
ment, co-defendant Ray Serio went to the Whiplash bar, which he part
owned.   After telling Bartender  Marcy McIntosh  where He had just
came from, McIntosh replied: "Why are they questioning you, I thought
you had nothing to do with it [Neubauers murder.]   McIntosh's
fiance (Jim Natywa) was sitting at the next stool over from Serio at
this time...Serio replied to McIntosh's question stating: **"What do
you mean nothing to do with it, I did it."**   At this point Natywa
stated he did not want to hear any more and he left the area.**(see
Affidavit)(Exh. M)**

McIntosh stated that Serio went on to tell her that He
got into a confrontation with the victim Neubauer out in the parking
lot of Whiplash where he shot Neubauer once in the head and then
more times later because that didnt kill him. He also said that
Rick was nothing but a punk and didnt deserve to live and Denise
(Schubat) was better off without him. Serio also stated that Schubat
was present when this all happened.**(see Affidavit)(Exh. L)**

At the January 29th,2003, Hearing on Admissibility of
Serio's confession, Trial Counsel failed to have Natywa present to
corroborate McIntosh's testimony as stated above (R.115-128).

Trial Court stated that Serio's statement to McIntosh
had not been corroborated by other evidence (R.155).   Trial Counsel
then requested to present Natywa the following day to corroborate
McIntosh's testimony. Trial Court denied the request (R.156) stating
 that today was your hearing date.

On Post-trial Motion with new Counsel (Jed Stone), defense

raised amongst other claims that Trial Court abused its discretion
in not allowing Trial Counsel to present Natywa the following day
(Issue 27-28 Post-trial Motion) and that Trial Counsel was ineffective
for failing to file a Motion to Reconsider to Corroborate McIntosh's
Testimony.

The Post-trial Motion was denied and on Direct Appeal the
Appellate Court ruled that they can not speculate on Natywa's
existence, availability or contents of testimony and therefore
defendant has not shown Trial Counsels failure to call this witness
fell bellow standards.(Rule 23 order No.2-03-0920 at Pg 15)(Exh.S)
Consequently, we cannot say that the Trial Court abused its discret-
ion in so finding (reliability issue) and excluding McIntosh's
testimony as to Serio's statement (also at Pg 15).

Petitioner retained yet once again new Counsel: (Thomas
Brandstrader) and sent      Mr.Brandstrader a draft of a Petition
for Rehearing formed by Petitioner raising amongst other claims,
that Counsel Jed Stone was ineffective in failing to provide
reviewing Court with proper Court Record & facts (i.e.,Affidavits,
Police reports, Statements and other evidence supporting Post-trial
claims).

Mr.Brandstrader responded by mail enclosing a copy of
Petitioners draft, stating that infact the above issue would be
included within the Post-Conviction (see Exhibit U ). However, as
raised within Successive Post-Conviction (Pending) Mr.Brandstrader
failed to raise this above mentioned claim on Jed Stone, which was
noted by Appellate Court affirming Trial Courts dismissal of Post-
Conviction without a hearing stating: "Defendant offers no reason
as to why he could not have obtained an affidavit from Natywa to

18

support his Post-trial Motion Arguement of Ineffective Trial Counsel
based on Counsels failure to interview or present Natywa to corrobo-
rate McIntosh's testimony.  **Defendant also provides no explanation**
as to why he did not attach supplementary reports from Lake County
and Kenosha Sheriff's Departments, transcripts from Trial proceedings,
-Police interviews, and other materials related to Neubauer's murder
investigation (all which defendant attached to his Post-Conviction)
**to his Post-trial Motion.** Therefore, we have no reason to look past
res judicata to reconsider defendants claim of ineffective Counsel
based on Trial Counsels failure to present Natywa and we decline to
do so. (Rule 23 order No.02-06-0227 at Pg's 16-17) (Exh. T)


Petitioner argues that these decisions are unreasonable
by the state courts in light of the evidence involved in this case.
Both Trial Court and Appellate Court assert this notion that there
is no idea about Natywa's existence, availability, or contents of
testimony.  The record is clear (R.104-149) inthat McIntosh provided
sworn testimony that Natywa was sitting next to Serio when he said
"I did it."

Also, Trial Counsel as a sworn officer of the Court told
Judge Booras what the proposed testimony of Natywa would be as an
"offer of proof" to the Court. Furthermore, Trial Counsels request
to present Natywa the following day to Trial Court completely
dispells the Courts notion of decisions concerning whether to call
a certain witness are the discretion of Trial Counsel and enjoy a
strong presumption of sound trial strategy. (Rule 23 order No.2-03-
0920 at Pg 14) (Exh. 8)

Moreover, with review of the Grand Jury Transcripts (June 19th,2002) clearly the use of wording "Mr.Ruhl **or** Mr.Serio" repeatedly to the Grand Jury, and the states own witness detective Jonites testimony was that "We have one witness (Denise Schubat) who say's Ruhl shot Mr.Neubauer in the Whiplash parking-lot, and we have another witness (Amanda Barbaro) who states that Ray Serio confessed to her that He (Serio) infact shot Mr.Neubauer in the Whiplash parking-lot, (at Pg's 10-11).

[Trial Counsels ineffectiveness in failing to interview and present Ms.Barbaro seems to be consistently ignored by state reviewing courts] However, this does not change the fact the state sought two different theory's of who shot Richard Neubauer to the Grand Jury in order to charge Mr.Ruhl, thereby denying McIntosh's testimony of Serio's confession to her as, **"lacking further assurances of trustworthiness of Serio's statement"** (R.150-160) was an erroneous ruling by Trial Court precluding defendant from presenting the same substance of evidence the States Attorney was afforded to bring these charges forward.

Furthermore, Trial Court seemed to have had no issue with the prosecutions use of co-defendants (Serio) hearsay statements through the testimony of an admitted liar (Denise Schubat) who had every motive to testify falsely, however the same Trial Court would exclude the testimony of defense witness McIntosh regarding Serio's statements. McIntosh had no relation to defendant or motive to testify falsely.

(Exh. G.M) Reviewing Courts refusal to entertain Natywa's Affidavit or Det.Jonites Affidavit of government informant(s) rendition of co-defendant confession of shooting Neubauer at Whiplash bar prejudiced Petitioner inthat Fundamental Fairness and the Interest of

20

Justice should have demanded reviewing courts set aside any waiver or res judicata issues due to Counsels (Trial; Post-trial Motion; Direct Appeal; Post-Conviction Counsel) neglect in presenting this evidence at the proper time as Petitioner was at no fault for relying on retained Counsels ability to do so.


**Part III, 1.C**

As stated within the Appellate Court rule 23 order (No.2-03-0920 at Pg's 23-24): "the state gave no reasonable explanation why Officer Lamanna was not within the states witness list even if the state truly was still trying to locate Officer Lamanna the second day into the Ruhl Trial.  However, failure of Post-trial/Direct Appeal Counsel to show prejudice suffered by defendant due to said violation (Rule 412(a)(i)) therefore does not constitute reversible error necessitating a new trial." (Ex. 5)


This ruling is contrary to the evidence within this case and completely disregards the issue of ineffective assistance of Trial Counsel associated to this same issue.

Counsels openning statement to the Jury included,: "My client absolutely had no knowledge whatsoever of anything that occurred, **you are not going to hear any of this evidence whatsoever tie my client in anyway to any of this.**"(R.348)


Counsel stated to Trial Court: "Clearly I would be in the position of making a different openning statement had I been aware." (R.407)

Trial Court rejected this notion and without question accepted the
prosecution saying: "We finally found him last night (Lamanna), Its
not as if we had this information, sat on it, let Mr.Edens make an
openning and then give it, and say oh by the way, we have been hold-
ing on to this to sandbag you. Thats simply not the case."(R.406)

The Appellate Court on Direct Review refused to supplement
the record with the transcripts of Officer Lamanna's testimony from
co-defendants trial where infact Lamanna testifys that "the States
Attorney (same as Ruhl Trial) first contacted him **two days before** (Exh.H)
the Ruhl Trial actually began,(Direct Appeal Reply Brief at Pg's 3-4).

Furthermore, the prosecution relied heavily on the alleged
identification of Petitioner by Officer Lamanna during the states
closing argument: "The fact Mr.Edens tells you this doesnt make it
so, the evidence doesnt tell you that, the Judge is going to tell
you the evidence is what you must rule on. Mr.Edens referred to
Officer Lamanna as delusional, you will get a chance to look at this
photographic lineup. This is pretty darn good, people all look like
eachother. Frankly would Officer Lamanna initially remembered the
stop, very possibly not. But there is a computer printout of when
the stop took place; there is a printout of the license being run.
(Exh. H) (DM.185-187)  And once again, its not Denise Schubat in the car with
Mr.Serio, its Mr.Ruhl over there (pointing) in the car with him, so
they are still together." (R.1061-1062)

Petitioner argues that not only does Officer Lamanna's
testimony within co-defendants trial prove that the prosecution
knew of both the traffic stop on Serio and Officer Lamanna **before**

22

the Ruhl Trial began, but also with review of DM.185-187 the report
was dated April 7th,2002 (Det.Lucci), some 11 months before the
prosecution stated to Trial Court "they just located Lamanna."

    The testimony of Officer Lamanna was clearly prejudicial
to the defense by allegedly placing Petitioner in the car with Serio
(admitted killer) approximately less than two hours after the victim
was alleged to have been shot and only miles of where the victim was
found.

    This once again discredited the defense presented by
Counsel during openning and infact bolstered the states case regard-
ing Schubat, and strengthened the states secondary theory of
accountability offered at closing.(R.1063-1066)

    Petitioner further argues that unaddressed by the reviewing
courts was the claims of ineffective assistance of Trial Counsel in
failure to (1) review discovery prior to trial and in preperation
of trial (Exh.H,DM.185-187); (2) Counsel was told by Trial Court if
he got a statement from Lamanna that he could not identify the
passenger, the Court would consider his Motion to Exclude the Officer,
Counsel accepted the Courts invitation (R.411-413) Counsel failed
to show up to interview Officer Lamanna, thereby (3) failed to
question Lamanna on when he was first contacted by the prosecution;
(4) failed to get the name of the backup Officer who removed passen-
ger and watched over both driver and passenger (via Lamanna testim-
ony), and (5) failed to attend the photo lineup and been aware that
Article 5/107a-10: lineup and photographic lineup procedure had been
violated by lead detective Jonites administrating the lineup to
Officer Lamanna,(administrator shall be someone who is not aware of

23

which member of the lineup is the suspect.)

Had effective Counsel reviewed the discovery before Trial he would have at the least been aware of the traffic stop and as stated "made a different opening statement had I been aware"(R.407), also the failure to interview backup Officer was ineffective considering the position the defense was placed in after making such an opening statement then facing this surprise witness.

Thereby Petitioner has met the prejudice prongs of the states discovery violation, as well as met the requirements of showing ineffective assistance of Counsel.

Again, Fundamental Fairness and the interest of justice should have demanded reviewing courts set aside any waiver or res judicata issues due to Counsels (Trial, Post-trial Motion, Direct Appeal, Post-Conviction Counsel) neglect in presenting this evidence at the proper time as Petitioner was at no fault for relying on retained Counsels ability to do so.

**Part III, 1.D**

Trial Counsel failed to investigate, interview, utilize in prepera-
tion of Petitioners defense the following individuals which were
readily available to Trial Counsel via discovery tendered to defense
by both the State & Petitioner himself.


**A) Det.Stanek (DM.129-133)**

Det.Stanke reported that on January 6th,2002, he and Det.Lucci while
at Richard Neubauers parents home informing them of Richards death
became aware that last known, Richard was on his way to pick up
Denise Schubat (mother of victims child) at Whiplash bar.

Schubat was summoned to the mothers house where she relayed
the same story to detectives as earlier to Ms.Neubauer that she never
seen Richard, he failed to show up to pick her up.   Schubat added
that she repeatedly looked out the window for him to show up because
Richard didnt like the bar and infact has never been inside Whiplash
bar.


**B) Det.Stanek (DM.155-156)**

Det.Stanke reported that on January 8th,2002, he and Det.Weyker
re-interviewed Schubat where she stated that Richard was a drug
dealer and mentioned a meeting with his dealer Louie Vine, who
supplied Richard with the "date rape drug."   Schubat also stated
that Richards other supplier PMK, who lived in the Pavilion
apartments in Rosemont was owed $1200.00 by Richard and refused to
supply anymore drugs to Richard after his 12/17/01 arrest for poss-
ession.

Furthermore, Schubat told detectives, Richard was also involved with a man "Johnny Bin Laden" who he'd meet in Chicago at the Glow Club which Schubat stated was "Mob run."

Schubat would accompany detectives over the next three months to different clubs in Chicago and indicating different people Richard was involved with.

### C) Det.Weyker (DM.147-150)

Det.Weyker reported on January 8th,2002, Denise Schubat also stated that a man named Michael Wohlfeil has been attempting to date her, and she said was obsessed with her and is jealous of any other boy friends she dates.

Furthermore, Schubat again relays that Neubauer never came inside Whiplash bar.   Through the investigation Det.Weyker reported that Whiplash bar had been open approximately six months and was operated by Raymond Serio; Chuck Serio; and according to local Police Agencies, **investigators stated it was known that Schubat; the Serio brothers; and the victim Neubauer, were trafficking drugs through the Whiplash bar.**

### D) Det.Lucci (DM.160)

Det.Lucci reported on January 12th,2002, conducting a search of the home computer where several e-mail addresses of acquantances of Richards, and portions of e-mail messages from his prior girlfriend Cathy Davis were recovered.

### E) Det.Lucci (DM.188-190)

**On April 4th,2002,** through confidential informant (Amanda Barbaro) Detectives: Stanek, Lucci, Jonites, Urquhart, Hafke, and Smith, were

26

all informed that Denise Schubat had been lying to them for the past
three months at which time Schubat was brought to the Lake County
Sheriffs Department.   She was advised that they were aware Neubauer
was killed in the parking lot of Whiplash bar and that her boss Ray
Serio was involved and the fact she was there when it occurred. (DM.
188)

Denise began to cry and got very nervous in appearance.
Schubat stated that Ray and her had sexual relations and that **Denise
told Ray that Neubauer beat on her in the past and it would be nice
if he was just out of the way. Ray said he could kill Rick so they
could be together.**  However Schubat said that it was not Ray who
killed Neubauer, it was Ron Ruhl,(DM.188).

Schubat stated that after overhearing a phone conversation
between Ruhl and Serio, she heard a gunshot, followed by pounding
on the glass of the door, **then after glass breaking she saw Ruhl enter
the bar with a gun,** at this time she stated that Serio told her to
go home and act like nothing ever happened and that Neubauer never
showed up  -  at which time Schubat said she went home and called
Neubauers cellphone at 248AM and leaving a message asking why he
didnt show up.

Schubat was asked if she knew it was going to happen or
if she was part of the set up. She said she never took Ray seriously
and never thought he would actually do it,(DM.189).

During the course of the interview **Denise was very nervous
and appeared deceptive when asked questions indicating her possible
involvement, very little eye contact and squirmed frequently in her
chair.**   Later during the interview she began to minimize her previous

27

statements, such as not recalling if Ron (Ruhl) said they had to get rid of the body. **She also did not relay information freely and was noticeably giving body language which is consistent with being deceptive,**(DM.189).

Denise was asked to take a Computer Voice Stress Analyzer Test (CVSA) Det.Smith advised Denise was deceptive on her responses; when asked if she saw who shot Neubauer she indicated "no." This was shown deceptive.

When asked if she asked anyone to shoot Rick she indicated "no." This shown as deceptive.    When asked if she knew Rick was going to be killed she indicated "no." This was shown as deceptive. **Due to the results Denise was interviewed again and was once again very uneasy, very unsettled during her account and had to be redirect-ed several times to prior statements.**

**F) Det.Hafke (DM.203-206)**

Det.Hafke **(April 4th,2002)** reprted during the investigation we received information that Denise was aware Rick was going to be killed and that she played a part in setting it up:   I asked Denise if she ever told Ray that she wanted Rick dead, she **admitted that while upset with Rick she told Ray "It would be better if he (Neuba-uer) was just gone."** (DM.203-204)

I asked Denise if Ray has ever talked in the past about killing Rick, she stated that they did. **She said about a week before Rick was killed she was in the kitchen of the Whiplash bar with Ray, he approached her and said he was serious about killing Rick,**(DM.205)_

28

Denise admitted that Ray has tried to have her "set up Rick" and stated Serio saying that the Friday before Rick was killed he waited for Rick to drop off Schubat at home where Ray was going to kill him,(DM.205).

I asked Denise why she didnt warn Rick that Ray was going to kill him, **Denise was very uncomfortable with this part of the interview as well, she would not make eye contact, often put her head down on the table.**

I asked her about all the conversations with Ray about killing Rick and how he wanted her to help set it up, she continued to say she thought he was joking,(DM.206)

## G) Det.Jonites (DM.7-9)

Det.Jonites on March 28th,2002, signed a sworn affidavit in an applic- ation for Authorization to Use Eavesdropping Device stating that through information of a government informant (Amanda Barbaro) which Det.Jonites believes to be true, J.Doe states that Ray Serio told her that he infact shot Richard Neubauer once in the head while he was in his car waiting in the Whiplash bar parking lot, Ray Serio subsequently drove the car to the Bristol Renaissance Faire in Wisconsin.   Serio feared that Neubauer was still alive and shot Neubauer again,(DM.7 & 8).

## H) Det.Stanek (DM.224-229)(DM.185-187)

Det's. Stanek and Lucci received information from informant Barbaro that Serio also stated he was stopped by Police on the night he killed Neubauer.  An inquiry with the FBI verified a traffic stop on Serio

and confirmation of contact with Ray Serio on Jan. 6th,2002 at
05:17:52, by Waukegan P.D,.(inquiry dated April 2nd,2002)

### I) Statement of Michael Cunningham

Det.Urquhart, Stanek, and Lake County Detective Willer, freely
received this lengthy statement by Mr.Cunningham who frequently
went to the Whiplash bar.

Cunningham stated that he knew the victim Neubauer well.
Infact, describing tattoos' on Neubauer as well as Serio, he told
Detectives that he'd shot pool with Neubauer there and bought
cocaine from him there.

Cunningham also stated that he, Schubat, Neubauer, and
Serio, would frequently either remain at Whiplash for after hour
parties or would all go to other bars or parties that went on after
Whiplash had to close.  Cunningham gave the Detectives overwhelming
descriptions of the drug trafficking and people involved at the
Whiplash bar. However, throughout this entire lengthy statement not
once was Petitioners name (Ruhl) mentioned as being present or
involved in any way with the drug trafficking or people involved in
that trafficking.

### J) Det.Lucci (DM.157)(KL.173-176)

Det.Lucci reported on January 9th,2002, receiving a call from Det.
Meishish of the Phoenix Arizona Police Department, informing Lucci
that Melham Riachi was currently a suspect in a homicide in his
jurisdiction and a known drug dealer who travels frequently between
Arizona and Chicago.   Also was the fact Riachi uses the same
Attorney (Koozas) out of Chicago as Richard Neubauer and a business

30

card of Koozas was found underneath the victim.  KL.173-176 shows

that the fingerprint recovered from Neubauer's driverside doorhandle

matched to Melham Riachi.

## K) Det.Urquhart (DM.139-144)

Det.Urquhart, Stanek, Jonites, while investigating the Neubauer

murder case, obtained several search warrants regarding communications

subpoena, through which Neubauer cellphone records, relevant records

demonstrate **no call at 2:48AM from Schubats home phone number (847-

356-7455).**

However, GS.1-99 (Ray Serio Phone Records) do infact show a

total of **twelve phone calls within approximately two weeks after**

**Neubauer's murder, call length's up to 38 minutes long between Denise**

**Schubat's home number (847-356-7455) and Schubat's friends home whom**

**she lived with (Kilarski 847-265-7439) directly after Neubauer was**

**killed.**

Furthermore, Det.Urquhart reported hearing a voice-mail

message left on Neubauer's phone which he believed to be Denise

Schubat saying "Where are you?"

## L) Affidavit of Marcy McIntosh

McIntosh, on **April 4th,2002,** was bartending at Whiplash bar when

Ray Serio entered the bar and sat down next to her fiance Jim Natywa.

Serio relayed that he'd just left questioning by detectives

at Lake County Sheriffs' Department. McIntosh asked why they would

be questioning (Serio) because she thought he had nothing to do with

Neubauer's murder.  Serio replyed, what do you mean nothing to do

with it; "I killed him, he was a punk and deserved to die." McIntosh stated at this time Natywa got up and said he didnt want to hear anymore and walked away.  Serio continued to say he did it for Denise and that she was present when he went outside and shot shot Neubauer.  McIntosh also relayed other information regarding Schubat, Barbaro and Serio.

## M) Affidavit of Jim Natywa

Natywa on **April 4th,2002**, was also at Whiplash bar and heard Serio relay to McIntosh that he killed Neubauer, then Natywa states that he didnt want to hear anymore so he got up and walked away. Natywa also relayed viewing Serio's laptop computer with naked photo's of Schubat and other female bartenders.

## N) Affidavit of Jennifer Shoblom

Shoblom had known states key witness (Schubat) approximately 13 years, they vacationed together, talked on almost a daily basis. Shoblom stated that she had been with Schubat when Neubauer was being very verbally abusive and witnessed bruises on Schubat that were suspicious.

Furthermore, she had been asked by Schubat's mother on January 6th,2002, to go too the Whiplash bar and tell Schubat's boss she wouldnt be coming to work that day via the news of Neubauer, **Shoblom did so and knocked on, peered through the same glass on the door that was allegedly broken by Petitioner only hours earlier that same morning Neubauer was shot.**

Finally, Shoblom also witnessed Schubat and Serio at her home after Neubauers death and Schubat did not seem afraid of Serio or ask her to have Serio leave. This occurred twice within approximately one week of the victims death.

Shoblom stated that she went to the Ruhl Trial to testify but was directed by Trial Counsel to leave after she stated she really didnt know Ray Serio.

## O) Affidavit of Scott Owens

Owens had known Schubat approximately twelve years and also stated Schubat complained inthe past of Neubauers physical abuse from time to time and also witnessed Schubat and Serio at Shoblom's house for a small gathering.

## P) William Niemi Information

Niemi was a regular at Whiplash bar and involved within the drug trade there. Niemi was another witness whom allegedly overheard Ray Serio making admissions to the Neubauer murder.

Each one of the above mentioned witnesses and documentation thereof were critical to Petitioners defense inthat any review of this case clearly sets forth the fact the prosecutions entire case relied solely on the credibility of denise Schubat, thereby making Trial Counsel gravely ineffective in failing to utilize all above mentioned reports bringing the Jury's attention to the fact Schubat was completely confident to lie too her family, friends, the victims family, as well as some seven different trained veteran detectives

in order to cover up her involvement in Richard Neubauers murder
while pointing out other potential suspects to detectives for three
(3) months, this leaving no reason to believe Schubat was not
capable of also lying to the Jury as well.

Trial Counsel not only failed to call these detectives
on behalf of the defense, but also completely failed to mention
even one fact within these reports of Det.Lucci, Stanek, Urquhart,
and Jonites during cross-examination as states witnesses.


Reviewing Courts dismissal of this issue stating:
a particular decision not to call certain witnesses rely's on
Counsels judgement, Petitioner fails to show unreasonable judgement
or prejudice to Petitioners case - noting Appellate Court; "We do
not consider the evidence of defendants guilt to be close."
(dismissal order at Pg's 5-6) (Exh. S)


Petitioner argues that the reviewing courts quote of the
Appellate Court ignores the vital end of that same quoted paragraph
inthat: "On the otherhand, there was scant evidence presented show-
ing that Schubat had Serio kill Neubauer and that she helped Serio
abandon the body." (Rule 23 order No.2-03-0920 at Pg 24) (Also Exh.S)


In this case the prosecutions opening statement (R.337-
348) to the Jury contained alleged facts that are completely
contrary to the above stated witnesses, reports, and contained
evidence inthat:

34

The prosecutions theory was that Schubat worked at Whiplash bar for 1½ years with Serio continuing to pursue a sexual relationship with her throughout this time, **finally in October of 2001 she made a big mistake and slept with Serio one time,** (R.338-339).

Schubat made it clear the next day she did not want anything more to do with Serio, but that he continued to "try and get her to leave the bar with him to sleep with him." (R.341)

**Then shortly before January there was a conversation with Serio, Ruhl, and Schubat in the Whiplash bar where Serio is open with Ruhl about getting rid of Neubauer,** (R.341-342).

Neubauer and Schubat started dating again around Thanksgiving (2001) several weeks after "that very ill-fated night she spent with Serio."

Neubauer wouldnt come in Whiplash, he didnt like the bar "and with good reason," (R.343)    The night in question Schubat heard Serio tell Ruhl to shoot Neubauer in the head while he was in the parking lot of Whiplash bar, shortly after hearing a gunshot Schubat heard pounding on the door, glass breaking then "in comes this defendant carrying a gun." **Serio threatened her and her daughter, Schubat was extremely scared and Serio made her place the cover up calls to** (R.346) **Neubauers phone and cover up Neubauers murder to Police for months.**

This theory of the prosecution(s) was backed by the testimony of the states star witness Denise Schubat. Including that there was never any child support problems between her and Neubauer..."even extra when I needed it;" nor ever any violence between the two, (R.560, 565, 597, 626, 628-629).

35

That she did not go to other bars after hours with Serio, that **she only went with Serio one time in October of 2001, to the hotel and that she was "disgusted with herself and it wasnt ever going to happen again,"** (R.577-579)

That Neubauer never went inside Whiplash bar and only met Serio one time in passing,(R.584-586).  That Serio kept bothering her throughout December of 2001 to go out with him, but she said "No," (R.586-587).


Furthermore that the conversation in the kitchen about killing Rick happened approximately a week before he was killed and that conversation took place between Ruhl & Serio (R.588-593), then the night in question after overhearing a phone conversation between Ruhl & Serio where Ruhl is to go up to Neubauer in his car and shot him, she heard a gun shot, then heard pounding on the door and glass breaking, Ruhl came in with a gun and Serio threatened her and her daughters life,(R.612-618).

She followed Serio directions and went home and placed a phone call to Neubauers phone from her home land-line phone leaving a message that she was home and would talk to him later, (R.621-622).


Schubat then testified from the time she left the Whiplash parking lot that night (Jan,6th,2002) **she had never seen or spoken to Ray Serio at all,** (R.623).  Furthermore that when questioned by Police (Jan,6th,2002) at the Neubauer house **she told the Police nothing,** because she was "terrified" of Serio and didnt want nothing to happen to her daughter.

36

That while detectives questioned her between then and April 2002, she told them "she didnt know what had happened that night," (R.625).

That in April 2002, she went to the Lake County Sheriff's Department and told detectives the "truth" because the first four months she didnt feel the Police could "protect" her from Serio.

Also that between Thanksgiving 2001 until Neubauers murder she was "thrilled" to be back with Neubauer and everything was "wonderful" and she had never asked anyone to kill Rick, (R.626-629)

Schubat again identifys the door with alleged broken glass and kitchen were alleged conversation about killing Neubauer occurred between Serio & Ruhl, (R.635-636).


During cross-examination Schubat would testify again to sleeping with Serio one time in October 2001 (R.696-699), Serio's alleged conversation with Ruhl about killing Neubauer while in the Whiplash kitchen (R.704) then testifys to the defendant breaking the window in the door and that Neubauer was never inside Whiplash bar and did not know Serio, (R.739-741).

Trial Counsel (Edens) concedes that Schubat & Serio were inside Whiplash bar when the gun shot was alleged to been fired (R. 662-669), concedes to Schubats 2:48AM land-line phone call (R.765).

Edens implys the fact Schubat said "nothing" to detectives from January 6th,2002 through to April 2002, (R.796), also that Schubat first learned Neubauer was dead through detectives at Neubauers house January 6th,2002, (R.801), but later in closing tells Jury that Schubat shot and killed Neubauer then moved his body, (R. 1033).

Edens then concedes Schubat came forth with the truth to detectives on April 4th, 2002, as she was "testifying too here today," (R.809)

Edens concedes that defendant took part in the alleged conversation within the Whiplash kitchen about killing Richard Neubauer (R.813-814) and concedes to an alleged $2,000.00 to $2500.00 owed by defendant to Serio which was completely untrue and No evidence of being true, (R.817-818). Finally, Edens concedes that Schubat left Whiplash bar while Serio stayed with Neubauers body (R.834) [again contrary to his later closing argument.]

Gone unpresented to the Trier of Fact due to Trial Counsels incompetence and failure to investigate was that:

1) (A)(B)(C) would have proved contrary to the testimony that between January 6th - April 4th, 2002, Schubat told detectives "Nothing and she didnt know what happened." The Trier of Fact when assessing Schubat's credibility surely would have made a difference knowing the actual facts, there is a big difference between, I dont know what happened, V.S. Richard Neubauer was involved with the Mob and sold the Date Rape drug, owed "Johnny Bin Laden" money for drugs (aside from the other four people she implicated). The level of deception needed to be presented to the jury, furthermore, this would have supported Trial Counsels pre-trial hearing on Neubauers drug trade involvement.

2) (C)(I) would have proved contrary to the testimony that Neubauer had never been inside Whiplash bar, did not know Serio, and that Schubat didnt regularly accompany Serio after hours.

Also would have been vital in supporting Counsels pre-trial hearing on Neubauers involvement in the drug trade with Serio, thereby creating motive to kill Neubauer after his 12/17/01 arrest for Possession with Intent to Deliver, which occurred in front of the Whiplash bar.    Finally, rebutted the states notion that Ruhl was "attached at hip with Serio" as there is No mention of Ruhl's name in any of the above regarding involvement with Schubat, Serio, and Neubauer.


3)(D) would have proven contrary to the testimony that Schubat's relationship with Neubauer was so wonderful since they got back together in November of 2001 thru January 6th, 2002.

The contents of these e-mails would also go to motive on Schubats part, as clearly Neubauer had made negative comments about Schubat, and final e-mail was consistent with wanting to get back together with prior girlfriend Cathy Davis. This last e-mail being less than 48 hours before he was murdered.

Furthermore, Trial Counsels failure to follow up on facts given to him by defendant and discovery led to the Jury being completely unaware that infact, contrary to testimony, Denise Schubat on December 15th, 2001, (little over two weeks before Neubauers murder) rented a hotelroom for herself and Ray Serio. Also recieved flowers at her house from Ray Serio later on December 15th, 2001. [This evidence also completely contradicts prosecutions closing that around Christmas, 2001, Schubat & Neubauer were on a little honeymoon and she wanted nothing to do with Serio, (R.990-994, 1044-1046)].

4)(E)(F) would have proven contrary to the testimony that Schubat never asked or talked about killing Neubauer prior to the murder of Richard Neubauer. Also would have been vital on rebutting any notion that Schubat **"freely came forth with the truth to detectives on April 4th, 2002,"** as <u>every</u> detective reported Schubat as deceptive to say the least on April 4th, 2002. Furthermore she did not "come forth," detectives received information from a government informant of Schubats cover up of Neubauers murder. **Finally, the conversations about killing Neubauer that occurred in the Whiplash kitchen clearly were between Schubat and Serio, <u>not</u> Serio and Ruhl as testified to.**

5)(G)(L)(M)(P) would have proved completely contrary to the testimony of who shot Neubauer, as all three witnesses were told by Serio himself that he infact shot Neubauer while he waited in the parking lot of Whiplash, then shot him more times later on at a second location. All three witnesses also stated Serio told them Schubat was present and aware this was going to happen, furthermore contradicts Schubats testimony of what occurred the night in question at Whiplash bar.

6)(N)(O) would have also proved contrary to the testimony provided to the Jury as both these witnesses were long time friends with Denise Schubat, and with no reason to testify falsely against her, (reports would corroborate abuse.) Both witnessed Schubat and Serio at Shoblom's home-get-together within days of Neubauer's murder dispelling any notion of being in fear of her life from Serio.

Both witnessed abuse between Neubauer and Schubat, further-more and most importantly, Shoblom was sent to Whiplash by Schubats own mother Sunday morning (Jan,6th,2002) only hours after the alleged story of Schubats that Ruhl broke the window before coming through

the door with a gun.  **Shoblom stated there was no broken window, boarded up window or broken glass,** which would have allowed the Jury to wonder how a custom cut piece of glass was replaced early on a Sunday morning or was Serio's confession (~~above at~~ #5, Pg 40) more plausible.


**7)(J)** would have raised serious questions as to ~~who~~ involved with Neubauers murder.  Trial Counsels complete failure to review and investigate available evidence led to no mention by defense whatso-ever of Melham Riachi during trial.

Riachi's fingerprint was recovered from the victims driver-side door handle of his car, (Noting that this was one of only three prints found inside or outside the victims car, not even the victims prints were found.) [Second print Schubats, Third print no match.]

Det.Lucci reported Riachi as a known drug dealer who was a suspect in another different murder case. Moreover was the fact Neubauer and Riachi used the same Attorney and that Attorneys business card was found underneath the victim.  Setting aside the murder suspect part, this was critical information for the Jury to have heard before deciding defendants innocence or guilt.

Counsel would have also insisted that the hairs found on the victim been tested to match those of Riachi, as well as the foot-print found outside of the victims driverside door.

In supporting this claim with review of trial transcripts it remains clear that the prosecution literally cut-off the states own forensic witness (Dr. Edward Justice) while mid-sentence from disclosing Melham Riachi's name as the person who's fingerprint was

found on the driverside door of the victim's car, (R.889/Feb,5th,2003,See Ex.J,Pg80A ). Moreover, this same prosecutor who withheld the above testimony from the Jury would state during closing: " **You could certainly make an argument had the fingerprint been on the driverside door, but that's not where her (Schubat) fingerprint was.**" (R.1053)

8)(K) would have proven completely contrary to the testimony regarding the alleged 2:48AM land-line phone call made to the victims cellphone by Schubat, thereby making it impossible for her to have abetted Serio abandoning Neubauers body.

This alleged land-line phone call was cited by the Appellate Court as supporting the contention that they did not consider the evidence of defendants guilt to be close,(order No.2-03-0920 at Pg 24). (Ex.S) Furthermore, the prosecution relied upon this same false testimony inferring there was a land-line call made by Schubat making impossible for her to been anywhere but at home during the 2:48AM time frame, (R.1085-1088).

Failure by Counsel to utilize Det.Urquhart's reports and findings left the prosecutions theory and star witness Schubats testimony of this alleged land-line call go untested to the Jury, as well as the twelve calls within two weeks <u>after</u> Neubauers murder, calls up to 38 minutes long between Serio and Schubat would have rebutted Schubats testimony that she was so terrified of Serio that she went to her friend Kilarski's house to hide from Serio and "never left those walls for three months,"(R.805-806, 624-627)

Kilarski testified for the state corroborating Schubat moved in with her after the events of January 6th, 2002, (R.966) also

that Kilarski only seen Serio one time and does not know Serio,(R.972).
Eleven of the twelve calls made **after** Neubauer's murder were placed
by Serio to Kilarski's house (847-265-7439) where Schubat moved,
leading a reasonable person to believe Serio was calling Schubat as
Kilarski just testified to not knowing Serio, as well as one would not
engage in phone calls up to 38 minutes in length with someone you are
"terrified" of.

Finally, Det.Urquhart reported hearing a voicemail message
allegedly left by Schubat on Neubauers phone saying "Where are you,"
this report contradicts Schubats testimony of the message she alleged
she left, (R.621).

9)(E)(F) trial Counsel also failed to investigate the basic notion
of motive, review of these reports clearly assert Schubat wanted the
father of her child dead and any competent Attorney would investigate
who benefited financially from Neubauers death.

Completely contrary to the prosecutions theory and Schubats
testimony (R.628-629, 597-598, 565) was the unpresented evidence that
Schubat had to file with the Courts six times between April 1999 thru
to December 1999 in efforts to recover ordered child support. Moreover
on August 26th Neubauer infact went to her house after court and
proceded to put out a lit cigarette on Schubats arm and damage to her
car, she inturn smashed Neubauers car with a babyseat and keyed the
side of his car, (both had complaints filed through same prosecution
office of Lake County as Petitioners trial.) (ɛ.,(ᴏ),(ᴜ))

Furthermore, Schubat infact controls a $30,000.00 life
insurance payout via Neubauers death, as well as now receives $803.00
a month from Social Security until Neubauers daughter turns 18 years
old (approx.14 years of payments or $134,400.00).

The prosecution relied heavily and repeatedly on the hidden financial gain of their star witness Denise Schubat as presented within the states closing argument that, **why would Schubat want Neubauer killed, now she gets no child support and she's left raising her daughter with nothing,** (R.1047, 1056~1058).

Trial Counsel left this testimony and theory go completely untested by the defense and would have been proven vital as to show motive on Schubat to have wanted Neubauer dead and also would have seriously damaged the states theory and Schubats credibility with the Trier of Fact.

10)(Q) trial Counsel was ineffective in failing to hire an investigator after requesting and receiving $5,000.00 for the sole purpose of investigating the said issues above and securing a drive-time experiment between Whiplash bar, victims body, and Denise Schubats home.    Counsel told Petitioner this experiment was completed by alleged investigator, opening statements the Jury was told they would hear this drive **could** have been made by Schubat easy, (R.357).

Trial Counsel lied to Petitioner and the Jury as he knew no such investigator or drive-time experiment existed. Petitioner was then extremely prejudiced by Counsels actions when the state produced testimony that Schubat **could not** have made this drive and been home at 2:48AM to place a call to the victims cellphone. [This drive-time testimony was cited by the Appellate Court (No.2-03-0920 at Pg 24) as corroborating Schubats testimony, thereby making the earlier discovery violation by the state harmless error.](Exh.S)

Trial Counsel also fradulently represented his experience in trying murder cases to both Petitioner and Trial Court. Petitioner inquired on Counsels experience before hiring him, Counsel told Petitioner he had tried twenty(20) prior murder cases, winning ninteen(19) and the last one being won on appeal.
[The only prior murder case on record Counsel was disqualified during pre-trial. People V. Crowe, 327 Ill(2002)]

Petitioner expected Counsel as an officer of the Court to be honest when questioned on his experience on a matter for which a defendant seeks to hire assistance of Counsel to defend him in that matter.

Trial Counsel being questioned on record about his ability to handle Petitioners case on numerous occassions by Trial Court supported Petitioners ineffective claim and led to Counsels response to Trial Court that he infact "does mostly murder and major drug cases," (R.43-48).

Trial Court response to this claim was: "While attorneys commit ethical violations by misrepresenting experience to a client and Court, such misrepresentations do not, per se constitute ineffective assistance of Counsel," (dismissal order at Pg 7).(Exh.A)

This ruling by Trial Court is once again erroneous inlight of the evidence supporting this claim of ineffective assistance of Trial Counsel, as well as Trial Courts own repeated comments chastising Trial Counsel throughout pre-trial and Trial proceedings, such as: " Hopefully Mr.Edens knows what he is supposed to do"... (i.e.,subpoena out of state witnesses (R.35-42)) Which notedly Trial Counsel **did not** know what to do.  He failed to have Medical Examiner Dr. Levin present at defense Motion on Venue, failed to have the

45

Wisconsin EMT Personnel present; instead, before arguing said motion, Trial Counsel signed a stipulation prepared by the state (Exh. Q) regarding when, where, and what order the bullets entered the victim.

Trial Counsel entered this situation without ever speaking to Dr.Levin or reviewing her reports, the Trial Court ruled to dismiss defense motion on venue inlight of the stipulation signed by Trial Counsel, (R.49-65).

Only during cross-examination of Dr.Levin at trial did Counsel discover Dr.Levin could not determine when, where, or what order the Bullets entered the victim, Counsels response: **"So, we dont even know where this guy was shot,"** (R.878-880).

Trial Court in his Post-Conviction dismissal again regarded this as "Counsels strategic decision, and venue cannot have changed the outcome of Petitioners trial." (dismissal order at Pg 6)(Exh. A)

This ruling by Trial Court is contrary to the record on this issue. Clearly the States Attorney concedes on November 18th, 2002, that the Medical reports could be dispositive of the case, (R. 43-48).  Furthermore, strategic decisions must be an informed decision, reasonable assistance of Counsel would have required at minimum reviewing Medical Examiners reports before filing said Motion on Venue and certainly before cross-examination of Dr.Levin.


**11)(R)** Trial Counsels failure to appear on time or at-all on nine of eleven pre-trial dates and, Trial Courts on record court order for Counsel to be in the courtroom at 9:00AM for all following court dates also support(s) Petitioners claim of ineffective assistance of Counsel as a cumulative effect.

Counsel failing to appear at the critical January 30th, 2003, pre-trial date on the Admissibility of Co-defendants Confession was prejudicial to the defendant as "substitution Counsel for the day" had never any involvement on this case in anyway. No case file to work from, and also waived defendants right to be present at this pre-trial date.  However, more troubling is Trial Courts comments towards Mr.Edens inthat the level of agitation was so great that Trial Court stated:" **I did not request or even wish to have him (Mr.Edens) present.**" (R.150-160)  Judge Booras went on to deny defense request to present corroborating witness Jim Natywa stating, **Mr.Edens had that chance yesterday.**"

Petitioners argument is that this ongoing conflict with Trial Counsels attendance and performance throughout pre-trial and trial crossed over into a biased atmosphere where Petitioners right to present favorable witnesses fell second to the Trial Courts agitation with Mr.Edens.

Furthermore Petitioner sought to enter Counsels opening and closing statements in support of the claim Counsel offered no adverserial testing process of the case presented by the prosecution, infact, Counsels opening statement was so incredibly inconsistent with his closing argument that Counsel actually bolstered (repeatedly) the states theory of this case:

(1) "Ms.Schubat has suffered the loss of her father of her child" (R.349)

[C= Closing Argument]

(1.C) "Denise (Schubat) knocks on the window, Neubauer says Hi Denise and then she goes pop in the head, push the body over, Denise goes on, (R.1024-1033)

47

(2) " You are not going to hear any of this evidence whatsoever tie my client in anyway to any of this,"(R.350).

(2.C) " Ron (Petitioner) made a mistake and meets this guy (Serio) later I dont know, Ron has got Serio's car, he has to go someplace, pick up Denise (Schubat), 2:48AM picks him (Serio) up, they are in the car, I dont know." (R.1034-1035)
[Noting that Ruhl is sitting five feet from Trial Counsel while these assertions are being made by Edens which would lead the Jury to question why Counsel would not just ask his client what happened instead of saying "I dont know."]

(3) "The victim was transfered from Whiplash bar to Bristol Faire, that's what the facts appear to show," (R.350).

(3.C) " We dont even know from the Pathologist if he was shot at Whiplash bar or was shot in Kenosha, we dont know how he got moved over, we dont know," (R.1020).

(4) " I submit to you different individuals will testify the drive could have been done easy," (R.358)

(4.C) " I dont know... I dont know, look at the map, the map will be in evidence," (R.1029).

(5) " I dont cross-examine very much, because theres not alot of facts in dispute," (R.348).

(5.C) " The Police in this case were nothing but good, they told you what they got," (R.1040). [refer to (E)(F) & (G) i.e.,Schubat's reported deception.]

(6) " Dont think that I will be upset if you do something contrary to what I am asking for (finding of innocent) dont feel that you are going to hurt my feelings," (R.1003).

This only being a sample of the inconsistent, nonsense-like arguments within Counsels opening (R.348-360) and closing (R.1002-1042). Trial Courts response to this claim was that; " Counsels performance was certainly less than perfect: however perfection is not the standard" Trial Court presided over trial and feels performance meets constitutional standards, (dismissal order at Pg 6).(Exh.A)

This ruling weighs contrary to the evidence presented to reviewing court inthat even setting aside a moment the inconsistencies and nonsense-like arguments by Trial Counsel, if one can gather any proposed "theory" Counsel was asserting to the Trier of Fact, it was that the states star witness Denise Schubat was lying to them and that it was her intention to have Neubauer killed, and she achieved this by either having Serio shoot Neubauer, or possibly Schubat shot Neubauer herself. This "theory" of defense made absolutely vital the detectives reports (A,B,C,D,E,F) showing the length Schubat went to cover up her involvement, as well as her reported deception on April 4th, 2002, moreover her repeated conversations with Serio about killing Neubauer.

Also vital to defense would have been (K,N,O) to proving
that Schubat was infact **never** in fear of Ray Serio at all, she kept
constant contact with him after the murder while covering the murder
up.  Her lack of fear would thereby raise the question of why she
covered up her involvement.

[Which should be noted Trial Court himself after the Ruhl Trial, but
before Post-trial Motion stated on record; " **Secondly, I am not over-
convinced about Ms.Schubat being afraid of the defendant (Ray Serio)
in view of the remainder of the testimony,"** (May 27th, 2003, Pg's 6-
7 attached) Co-defendants transcripts.] **(A)**

Furthermore, Schubat's own friend (Jennifer Shoblom) would
also had testified to No broken or boarded up window in the Whiplash
bar door the morning of January 6th, 2002. **(N)**

The prosecution commented on Trial Counsels failure to
present any of this evidence to the Jury during the states closing
argument: " **We still havent heard any credible evidence regarding a
motive to kill,"** (R.1047-1062).  Repeatedly the state commented the
defense provided you no evidence backing anything.  " **The fact
Mr.Edens tells you this doesnt make it so, the evidence doesnt tell
you that,"** (R.1062).


Trial Courts ruling simply ignores the fact that Ray Serio
confessed to at least three people that he infact shot and killed
Richard Neubauer and that the Trier of Fact never heard a word from
any of these witnesses. **(G,L,M)**

Also ignores his own words regarding the states star
witness, and sums up Trial Counsels repeated blunders as trial

strategy or reasonable professional assistance, and finally that the Court finds that Petitioner suffered no prejudice based on the errors he asserts. (A)

Petitioner infact was gravely prejudiced, did not receive a fair trial and once again, Fundamental Fairness and the Interest of Justice should have demanded reviewing courts set aside any issue of waiver or res judicata due to Counsels [Trial, Post-trial Motion, Direct Appeal, Post-Conviction] neglect in presenting this above mentioned evidence at the proper time as Petitioner was at no fault for relying on retained Counsels ability to do so.

**Part III, Question #3**

As explained in Part II, Question #4, A (Pg. 12-14 of this filing)
the issue of Attorney Thomas Brandstrader (Petition for re-hearing
Post Conviction Counsel) failure to raise ineffective assistance
of counsel on Post Trial Motion/Direct Appeal Counsel (Jed Stone)
regarding Mr. Stones failure to provide and secure all: Affidavits
Police reports, Co-Defendants transcripts, Police interviews,
and other materials related to the Police investigation of Richard
Neubauer's murder by way of [ Motion to supplement the record]
in order to support claims raised by Mr. Stone within Post Trial
Motion.

This failure by Mr. Stone precluded review of this critical
evidence by both Trial Court and Direct review, Mr. Brandstrader's
failure to address the above stated within the Post Conviction
led to forfeiture /waiver of all this critical supporting evidence
and the Appellate Courts decline to review this evidence or issues
related to said evidence within the Post Conviction.

        This rendered Petitioner's Post Conviction fundamentally
deficient at no fault of Petitioner as provide at (U) Mr.
Bradstrader agreed to raise this very issue and failed to do
so. As such, Petitioner filed a Pro-Se Motion for Leave to file
a Successive Post Conviction Petition on July 31, 2008 with the
Lake County Illinois Circuit Court Clerk.

Included within said Motion for Leave to file a Successive Post
Conviction, Petitioner wants to provide reviewing court with
the evidence Mr. Brandstrader, did infact tell Petitioner via
mail that said issue first raised by Petitioner within draft

of Petition for re-hearing.  Would be included to Post Conviction
(at Exh.U)

Petitioner's intentions are, State Reviewing Courts possible
re-consideration of the previous decline to review this
exculpatory evidence after reviewing the diligence exercised
by Petitioner himself in getting this evidence and issued reviewed,
if not, that these issues and evidence are properly preserved
for review by Federal Reviewing Courts.


Respectfully Submitted,

Ronald Ruhl, R-12207
P.O. BOX 112
JOLIET, ILLINOIS
60434-0112